IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MATTHEW ISRAEL,  Plaintiff, v. KATIE ROTHROCK, Jail Administrator, JAMES BECK, Sheriff, KATHLEEN GORDON, Nurse,  Defendants. | Case No. 23-CV-0096-GKF-SH |

## OPINION AND ORDER

This matter is before the Court on Defendants James Beck and Katie Rothrock's Motion for Summary Judgment filed December 21, 2023 (Dkt. 46) and Defendant Kathleen Gordon's Motion for Summary Judgment filed December 27, 2023 (Dkt. 47). Plaintiff Matthew Israel did not respond to either motion. For the following reasons, the Court dismisses Israel's Pro Se Prisoner Civil Rights Complaint, in part, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted; grants Defendants' motions for summary judgment; and dismisses the Complaint, in part, under 42 U.S.C. § 1997e(a), for failure to exhaust available administrative remedies.

**I.   Background**

Plaintiff Matthew Israel, a self-represented pretrial detainee appearing in forma pauperis, commenced this action on March 3, 2023,[1] by filing the Complaint against three defendants: Katie Rothrock, the Delaware County Jail Administrator; James Beck, the Delaware County Sheriff; and

---

[1] Israel filed this action in the United States District Court for the Eastern District of Oklahoma. Dkt. 1. That court transferred the action to this Court on March 14, 2023. Dkts. 3, 4.

Kathleen Gordon, a nurse employed by Turn Key Health Clinics, LLC, the contracted medical provider at the Delaware County Jail (collectively, "Defendants").  Dkt. 1, at 1, 3-4; Dkt. 47-3, at 1 (Gordon Decl.).[2]  Israel seeks relief under 42 U.S.C. § 1983, claiming:  (1) that Rothrock and Beck violated his Fourteenth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment either by failing to protect him from being assaulted by other prisoners or by threatening to use excessive force against him; and (2) that Defendants violated his Fourteenth Amendment right to due process and his Eighth Amendment right to adequate medical care by failing to provide proper treatment for injuries he sustained when he was assaulted by other prisoners.  Dkt. 1, at 5-7.  He purports to sue each defendant in his or her individual and official capacities, and he seeks both monetary damages and injunctive relief.  *Id.* at 5-7, 9.

Defendants filed Answers to the Complaint on May 31, 2023, and June 2, 2023.  Dkts. 25, 26, 27.  The Court entered a Scheduling Order on June 7, 2023, and an Amended Scheduling Order on October 4, 2023.  Dkts. 30, 43.  Beck and Rothrock moved for summary judgment on December 21, 2023, and Gordon moved for summary judgment on December 27, 2023.  Dkts. 46, 47.  Israel did not respond to either motion and he did not request additional time to respond to either motion.[3]  Both motions for summary judgment are therefore ripe for adjudication.

---

[2] For consistency, the Court's citations refer to the CM/ECF header pagination.  Unless otherwise noted, the Court uses conventional rules for capitalization, grammar, and punctuation, and corrects obvious spelling errors when quoting from the record.

[3] Israel was detained at the Delaware County Jail when he filed his Complaint.  Dkt. 1, at 2.  In June 2023, he was transferred to the Cherokee County Detention Center.  Dkt. 28.  In October 2023, he was transferred to the LeFlore County Detention Center.  Dkt. 44.  Both summary judgment motions were mailed to Israel's address at the LeFlore County Detention Center.  Dkt. 46, at 24; Dkt. 47, at 15.

## II. Dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii)

When a district court authorizes a plaintiff to proceed in forma pauperis in a civil action, the court has a continuing obligation to dismiss the complaint, in whole or in part, "at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In determining whether dismissal under §§ 1915(e)(2)(B)(ii) is appropriate, the court applies the same dismissal standard as it uses in reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Kay v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). The court must accept as true all well-pleaded factual allegations in the complaint and determine whether those allegations are sufficient to state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain "detailed factual allegations," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[W]hen the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the complaint should be dismissed. *Twombly*, 550 U.S. at 558.

The court must liberally construe a complaint drafted by a self-represented litigant. *Kay*, 500 F.3d at 1218; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But even a self-represented litigant bears "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110. And the rule of liberal construction neither requires nor permits a court to "supply additional factual allegations to round out a plaintiff's complaint or

3

construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Applying these standards, the Court finds and concludes, for two reasons, that the Complaint shall be dismissed, in part, for failure to state a claim on which relief may be granted. First, to the extent Israel asserts claims under the Eighth Amendment, he fails to state plausible claims because the actions and omissions he describes allegedly occurred while he was a pretrial detainee at the Delaware County Jail. Dkt. 1, at 2, 5-7. "The rights of pretrial detainees, 'those persons who have been charged with a crime but who have not yet been tried on the charge,' are not controlled by the cruel and unusual punishment clause of the Eighth Amendment because the Fifth and Fourteenth Amendments prohibit punishment 'prior to an adjudication of guilt in accordance with due process of law.'" *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Court thus dismisses the Complaint without prejudice, as to all Eighth Amendment claims asserted against Defendants, for failure to state a claim on which relief may be granted. *See Chavez v. Bd. of Cnty. Comm'rs of Sierra Cnty.*, 899 F. Supp. 2d 1163, 1185 (D. N.M. 2012) ("A § 1983 claim that brings an allegation with the wrong underlying constitutional amendment, therefore, is invalid on its face and must be dismissed even if the protections are the same under both constitutional provisions.").

Second, to the extent Israel asserts his Fourteenth Amendment claims against Defendants, in their official capacities, he fails to state plausible claims because he does not allege facts suggesting that Defendants either acted or failed to act pursuant to a Delaware County custom, policy, or practice. Dkt. 1, at 5-7. "Individual capacity 'suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law.'" *Brown v. Montoya*, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011) (quoting *Will v. Mich. Dep't of State Police*,

4

491 U.S. 58, 71 (1989)). But when a plaintiff brings an official-capacity suit against a county official, the plaintiff is effectively suing the county. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). And, to establish liability against a county in a § 1983 action, a plaintiff must show either "[1] that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or [2] were carried out by an official with final policy making authority with respect to the challenged action." *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000). Even granting Israel the benefit of liberal construction, the Court does not read any of the factual allegations in the Complaint as sufficient to support a plausible official-capacity claim against any defendant. The Court thus dismisses the Complaint without prejudice, as to all official-capacity claims asserted against Defendants, for failure to state a claim on which relief may be granted.

Based on the foregoing discussion, the Court finds and concludes that the Complaint asserts only two plausible claims: a Fourteenth Amendment due process claim alleging that Beck and Rothrock, acting in their individual capacities, failed to protect Israel from being assaulted by other prisoners ("failure-to-protect claim"); and a Fourteenth Amendment due process claim alleging that Defendants were deliberately indifferent to Israel's need for medical treatment of the injuries he sustained when he was assaulted by other prisoners ("deliberate-indifference claim"). Next, the Court considers whether Defendants are entitled to summary judgment as to these Fourteenth Amendment claims.

### III. Summary judgment

Defendants Beck and Rothrock move for summary judgment on four grounds, asserting (1) Israel's medical care was always appropriate while he was detained at the Jail; (2) no evidence supports Israel's official-capacity claims; (3) Israel did not exhaust available administrative

5

remedies; and (4) Beck and Rothrock are entitled to qualified immunity. Dkt. 46. Gordon moves for summary judgment on two grounds, asserting (1) the evidence does not support Israel's claim that Gordon was deliberately indifferent to his serious medical needs; and (2) Israel did not exhaust available administrative remedies. Dkt. 47. Because the Court finds and concludes that Defendants are entitled to summary judgment on exhaustion grounds, and because the Court has dismissed the Complaint as to any official-capacity claims, the Court declines to address Defendants' remaining arguments.

      A.    **Summary judgment standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine'" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

At the summary-judgment stage, the court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). And, "[i]n making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

B.      **Material Facts**

Unless otherwise noted, the following facts are undisputed.[4]  On February 1, 2023, Israel was involved in a fight with two other prisoners in his jail cell at the Delaware County Jail ("the Jail"), in Jay, Oklahoma.  Dkt. 1, at 5 (Israel Aff.); Dkt. 46-1 (Jail Incident Report); Dkt. 46-9, at 1 (Rothrock Decl.).  Rothrock, Detention Officer Unruh, and Detention Officer Kevin Simmons responded to Israel's jail cell around 4:45 p.m., when the fight was reported to the control room.  Dkt. 46-1 (Jail Incident Report).  Officer Unruh removed Israel from the jail cell and took him to the control room hallway, while Rothrock and Officer Simmons questioned the other prisoners.  *Id.*  Rothrock went to the control room hallway and asked Israel if he wanted to press charges.  *Id.*  Israel declined to press charges.  *Id.*  Israel allegedly "receive[d] concussions, abrasions, contusions, and a broken nose."  Dkt. 1, at 6 (Israel Aff.).  Rothrock observed that Israel had a bloody nose.  Dkt. 46-9, at 1 (Rothrock Decl.).  Israel was taken to the nurse's office and "cleaned up," but he signed a written waiver refusing further medical treatment.  Dkt. 46-1 (Jail Incident Report); Dkt. 46-2 (Medical Refusal Form); Dkt. 46-3, at 2-3 (Israel Dep.); Dkt. 46-9, at 1 (Rothrock Decl.).  Because Israel signed a form refusing medical treatment, Gordon could not provide him with medical treatment unless he waived his refusal and consented to treatment.  Dkt.

---

[4] As previously stated, Israel did not respond to either summary judgment motion.  The Court therefore deems the facts set forth in the motions undisputed for purposes of summary judgment.  Fed. R. Civ. P. 56(e)(2); LCvR 56.1(c).  Because Israel appears without counsel, the Court also includes facts from his verified amended complaint, which the Court treats as an affidavit for purposes of summary judgment.  *See Lantec, Inc., v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002) ("A district court may treat a verified complaint 'as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56[(c)(4)].'" (quoting *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)).  Under Rule 56(c)(4), an affidavit or declaration must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(c)(4).  However, to the extent any allegations in the verified complaint "are merely conclusory," the Court disregards them.  *Conaway*, 853 F.2d at 793.

47-3, at 1 (Gordon Decl.). Israel sent his mother a text message around 9:00 p.m. on February 1, 2023, informing her that he "got into another fight" and "busted [his] nose all up." Dkt. 46-4, at 1.

The Jail has written grievance procedures. Dkt. 46-10. A prisoner may file an informal, or verbal, grievance by discussing a specific problem with a staff member. *Id.* If the matter cannot be resolved through an informal grievance or if the prisoner prefers to document the grievance, the prisoner may submit a written grievance to the Jail Administrator or the Undersheriff, using grievance forms that are available upon request, within seven days of a problem that results from a specific event or action. *Id.* Among other things, the formal grievance must address a matter within the control of the facility, request a remedy the facility has the power to grant, and clearly identify the wrongful act or harm done and any supporting facts. *Id.* The Jail Administrator responds to the grievance, in writing, within fifteen days after receiving the grievance. *Id.* A prisoner then may appeal to the Undersheriff, using the grievance appeal form or format, and the Undersheriff has fifteen days from the date the grievance appeal is received to respond to the grievance appeal. *Id.* The Undersheriff's decision is final. *Id.* Grievances are not received by medical staff. Dkt. 46-3, at 1 (Gordon Decl.). A prisoner requesting medical treatment must submit a sick call request. *Id.* Israel knew how to file grievances and make sick call requests while he was detained at the Jail. Dkt. 47-4, at 4 (Israel Dep.).

Five days after the fight, Israel submitted a written grievance. Dkt. 47-5; Dkt. 46-3, at 6-7 (Israel Dep.). The grievance stated, in full:

> Thank you[.]  [T]his is a complaint under 42 U.S.C. 1983 for violation to this prisoners rights to be free from excessive force and cruel and unusual punishments under the 8th and 14th Amendment[s] to [the] United States Constitution[.]  [T]his inmate was attacked and injured by offenders in Del[a]ware County Jail[.]  [T]he jail administration was personally involved by having inmates enforce policy on me [while] she stood and watched[.]  [T]his is a clear violation and jail admin

8

should not allow inmates to carry out excessive force[.]

Dkt. 47-4.  The response to the grievance states, "It will be sent up the chain of command and addressed."  *Id.*

On or about February 22, 2023, Israel visited the medical unit "for a bloody nose."  Dkt. 47-3, at 1 (Gordon Decl.).  Gordon's understanding was that Israel "was seeking mental health treatment," and Gordon "was not aware that [Israel] had complaints of physical injuries at that time."  *Id.*  The next day, Israel submitted a written grievance stating:

> Second stage exhausting of administrative remedies for complaint under 42 USC 1983 for excessive force and deliberate indifference to a serious medical health need when prisoner was attacked by inmates for staff and still never received proper medical treatments for broken nose, contusions, abrasions, and possible concussions.  Violating my rights to be free from cruel and unusual punishments under the 14th and 8th Amendments to US Constitution[.]

Dkt. 46-5, at 1.  The response, dated February 24, 2023, stated:  "Put in a sick call and the nurse will see you."  *Id.*

On February 25, 2023, more than three weeks after the fight, Israel submitted a sick call request, stating: "3rd stage final exhaustion of available admin remedies. Officials and medical [personnel] here [at] Del[a]ware County Jail know I was beat up by prisoners and received severe injuries broken nose concussions and have not provided adequate not [sic] proper treatment in violation to my rights to be free from deliberated indifference[.]"  Dkt. 47-7, at 1 (grammar in original).  This sick call request "was the first time [Gordon] was made aware that Israel had ongoing complaints of physical injuries, including a broken nose and concussion, that resulted from a physical altercation on February 1, 2023."  Dkt. 47-3, at 3 (Gordon Decl.).  Gordon responded to the sick call request on February 27, 2023, around 9:00 a.m., stating, "I just saw you last week. [A]nd it was ONLY about your mental health. You were brought into my office for a bloody nose while simmions [sic] was cleaning you up."  Dkt. 47-7, at 2 (spelling and emphasis

9

in original). That same day, Gordon called Becky Pata, an APRN, to inform Pata of Israel's complaints. Dkt. 47-3, at 2 (Gordon Decl.). Gordon contacted Pata because Israel's complaints were "beyond the scope of practice for an LPN." *Id.* Pata advised Gordon that Israel's symptoms were "not emergent" and told Gordon to schedule Israel for an appointment on March 1, 2023. *Id.*; Dkt. 47-8 (Appointment Calendar).

On February 27, 2023, around 6:30 p.m., the same day Gordon responded to his sick call request, Israel submitted a grievance stating:

> Yes[,] this is a complaint against the nurse under 42 USC 1993 and further exhaustion of available administrative remedies. This nurse today did a[n] exam on me with both inmates present in the doorway that attacked me. Then she lied and said she examined me, for this incident. Then [she] tried to refer me to mental health, when I'm complaining of physical injuries.

Dkt. 46-6, at 1. The response to this grievance, dated March 1, 2023, states, "It will be brought up the chain of command." *Id.*

After February 27, 2023, Israel did not submit any more sick call requests related to injuries he allegedly sustained during the February 1, 2023, fight. Dkt. 46-3, at 8 (Israel Dep.).[5]

Israel could not be seen by Pata on March 1, 2023, and Gordon rescheduled his appointment to March 8, 2023. Dkt. 47-3, at 2 (Gordon Decl.). Gordon emailed Pata on March 8, 2023, and attached a form indicating that Israel complained of "nose issues & blackouts." *Id.*; Dkt. 47-10 (Telemedicine Form).[6] Israel was seen by Pata on March 8, 2023, through a telephone appointment. Dkt. 47-11 (Provider Sick Call Note). Pata's notes indicate Israel complained of

---

[5] Israel submitted an unrelated sick call request on April 15, 2023, and was advised that he would be "brought to medical pending jail staff availability." Dkt. 47-7, at 3.

[6] Gordon's email to Pata states: "simmons refused please disregard him[.]" Dkt. 47-9, at 1. Neither Gordon's declaration nor any other part of the summary-judgment record explains the meaning of this statement. But the record does show that Pata provided a medical visit to Israel on March 8, 2023. Dkt. 47-11 (Provider Sick Call Note).

10

"nose, blackouts," and that Israel reported: "About a month ago, he was hit in the nose. Having pain. Breathing OK. Reports he blacked out for a few nights after the altercation. It has not happened since then." *Id.* Pata prescribed Ibuprofen for Israel to use as needed for thirty days to treat his "nose pain." *Id.*

Israel did not submit a grievance appeal as to any of his written grievances. Dkt. 46-9, at 2 (Rothrock Decl.).

    C.    **Exhaustion of available administrative remedies**

Defendants contend they are entitled to summary judgment because Israel failed to exhaust available administrative remedies before filing this civil action, as required by the 42 U.S.C. § 1997e(a). Dkt. 46, at 19-20; Dkt. 47, at 14-15.

Section 1997e(a), a provision of the Prison Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies if the plaintiff is a prisoner at the time of the filing of the lawsuit, regardless of whether he or she is released from custody while the litigation is pending. *May v. Segovia*, 929 F.3d 1223, 1228 (10th Cir. 2019). Also, this exhaustion requirement is "mandatory," *Jones v. Bock*, 549 U.S. 199, 211 (2007), and it "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) (stating that § 1997e(a)'s "mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account").

But "the PLRA contains its own, textual exception to mandatory exhaustion" because it

11

only requires exhaustion of "available" administrative remedies. *Blake*, 578 U.S. at 642. Thus, a prisoner "need not exhaust unavailable ones." *Id.* The *Blake* Court explained that administrative remedies are "unavailable" if an administrative procedure either (1) "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," or (2) "exists to provide relief, but no ordinary prisoner can discern or navigate it," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44; *see also Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (stating that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust").

When administrative remedies are available, however, a prisoner must properly exhaust them. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion is determined on a claim-by-claim basis, *May*, 929 F.3d at 1227-28, and "[a]n inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules,'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020)[7] (quoting *Ngo*, 548 U.S. at 90); *see also Little*, 607 F.3d at 1249 ("[A]n inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

To determine whether Defendants are entitled to summary judgment on the defense that

---

[7] The Court cites this unpublished decision as persuasive authority. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

12

Israel failed to comply with the PLRA's mandatory exhaustion requirement, the Court must consider three questions: *First*, whether the PLRA applies to Israel; *Second*, if so, whether administrative remedies were available to him; and *Third*, if so, whether he properly exhausted available administrative remedies as to either of his Fourteenth Amendment claims. Viewing the material facts in Israel's favor, the Court finds that none of these questions presents a genuine issue for trial.

First, there is no dispute that Israel was detained at the Delaware County Jail when he filed the Complaint. Because the undisputed facts show that Israel was a "prisoner" within the meaning of the PLRA when he filed the Complaint, there is no genuine dispute as to whether the PLRA's exhaustion requirement applies. *May*, 929 F.3d at 1227-28; *Nussle*, 534 U.S. at 524, 532; *see also* 42 U.S.C. § 1997e(h) (defining "prisoner" to include "any person . . . detained in any facility who is accused of . . . violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program").

Second, Israel fails to controvert facts presented by Defendants showing that administrative remedies were available to him. *See May*, 929 F.3d at 1234 ("Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'"). As previously discussed, undisputed facts in the summary-judgment record show that the Jail has a written grievance procedure, that Israel knew how to navigate it, and that Israel received responses to his grievances. And there are no facts in the record suggesting that any jail officials thwarted or hindered Israel's efforts to utilize the grievance procedure. On this record, no reasonable juror could find in Israel's favor on the question of whether administrative remedies were available.

Third, no reasonable juror could find in Israel's favor on the question of whether he properly exhausted available administrative remedies as to either his failure-to-protect claim or his deliberate-indifference claim. The undisputed facts show that Israel timely submitted a written grievance on February 6, 2023, alleging he had been "attacked and injured" by other inmates "while [Rothrock] stood and watched" the altercation. Dkt. 47-5, at 1. Israel received a response within fifteen days, as provided in the Jail's written grievance procedure. *Id.* Even assuming this grievance—which was styled as a "complaint" seeking relief under § 1983 and does not otherwise appear to meet the content requirements stated in the Jail's written procedure—could be deemed sufficient to begin the grievance process as to Israel's failure-to protect claim, it is undisputed that Israel did not file a grievance appeal after receiving a response to this grievance. Because Israel did not finish the Jail's grievance process as to his failure-to-protect claim, he is barred from asserting that claim in this action. *Jernigan*, 304 F.3d at 1032.

As to the deliberate-indifference claim, Israel filed his first grievance arguably identifying that claim on February 23, 2023, well beyond seven days after the specific event that caused his alleged injuries. *See* Dkt. 46-10, at 2 (providing that "[a] problem that results from a specific event or action is presented on the approved [grievance] form within seven [7] days of the occurrence"). In addition, after receiving a response to this grievance advising Israel to "put in a sick call," Israel submitted a sick call request on February 25, 2023. Uncontroverted facts in the summary-judgment record show that was the first sick call request he submitted reporting the "severe injuries" he allegedly sustained during the February 1, 2023, fight, and the first time he sought medical treatment after having refused treatment, in writing, on the day of the fight. And the substance of the sick call request strongly suggests that Israel's focus was on exhausting administrative remedies to file a lawsuit, not on requesting medical treatment for his alleged

14

injuries. *See* Dkt. 46-7, at 1 (identifying reason for request as "3rd state final exhaustion of available admin remedies" and alleging he was denied adequate treatment for his "severe injuries" without describing any specific injuries). In any event, Israel received a response from Gordon only two days after submitting the sick call request. Admittedly, that response appears to blame Israel for not reporting his need for medical treatment sooner. Dkt. 46-7, at 2. However, despite Gordon's terse response, Gordon promptly sought guidance from a medical provider with appropriate experience to address Israel's medical complaints and scheduled an appointment for him with that provider. On the same day he received Gordon's response, and without waiting to be seen by that provider, Israel nonetheless filed a grievance asserting "a complaint against the nurse under 42 USC 1993" and alleging that Gordon failed to treat his physical injuries. Dkt. 46-6, at 1. More importantly, after receiving a response to this grievance stating that this issue would "be brought up the chain of command," Israel did not submit a grievance appeal. Because Israel did not finish the Jail's grievance process as to his deliberate-indifference claim, he is barred from asserting that claim in this action. *Jernigan*, 304 F.3d at 1032.

### D. Conclusion

The undisputed facts support Defendants' assertions that Israel's failure-to-protect and deliberate-indifference claims are barred because he did not exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The Court therefore grants Defendants' motions for summary judgment and dismisses the Complaint without prejudice,[8] as to both Fourteenth Amendment claims, for failure to exhaust available administrative remedies.

---

[8] "Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (emphasis in original).

**IT IS THEREFORE ORDERED** that Plaintiff Matthew Israel's Pro Se Prisoner Civil Rights Complaint filed March 3, 2023 (Dkt. 1) is **dismissed without prejudice**, in part, under 28 U.S.C. § 1915(e)(2)(B)(ii), as to all Eighth Amendment claims and all official-capacity claims asserted against Defendants, for failure to state a claim on which relief may be granted.

**IT IS FURTHER ORDERED** that Defendants James Beck and Katie Rothrock's Motion for Summary Judgment filed December 21, 2023 (Dkt. 46) and Defendant Kathleen Gordon's Motion for Summary Judgment filed December 27, 2023 (Dkt. 47) are **granted**, and Plaintiff Matthew Israel's Pro Se Prisoner Civil Rights Complaint filed March 3, 2023 (Dkt. 1) is **dismissed without prejudice**, in part, under 42 U.S.C. § 1997e(a), as to all Fourteenth Amendment claims asserted against Defendants, for failure to exhaust available administrative remedies.

**IT IS FURTHER ORDERED** that the motion hearing set for March 12, 2024, is hereby **stricken**; that this is a final order terminating this action; and that a separate judgment of dismissal shall be entered herewith.

**DATED** this 6th day of March, 2024.



GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE